UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:10-cr-51 |
| v. ) | |
| ) | *Mattice / Lee* |
| HAROLD JACKSON ) | |

## REPORT AND RECOMMENDATION

Before the Court is the motion of Defendant Harold Jackson to suppress evidence, a firearm, found on his person during his encounter with police on December 30, 2009 [Doc. 9].[1] After careful consideration, I find no constitutional violation with respect to the investigatory detention of Defendant and I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I.    BACKGROUND**

At the evidentiary hearing on the motion, the Government offered the testimony of Chattanooga Police Department ("CPD") Officer Marvin Crider ("Crider"), who testified as follows:

Crider has been an officer at the CPD for almost 15 years and has been assigned to the Special Investigations Unit, which conducts fugitive investigations, for several years. On December 30, 2009, around 11 o'clock on a cold morning, Crider and his partner were in plain clothes in an unmarked, tan Ford Explorer on a routine fugitive patrol. They were traveling northbound on Willow Street looking for persons wanted on outstanding warrants when he saw Defendant walking southbound, diagonally across the intersection of Willow Street and East Third Street. Defendant paused when he saw the unmarked car, deliberately turned his back to the car and pulled the hood

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 10]. The Government filed a response in opposition [Doc. 12] and an evidentiary hearing was held on June 15, 2010.

of his "hoodie" up and down low over his face. Based on his law enforcement experience, Crider believed the Explorer, while unmarked, was well known as a police vehicle in the area. Crider also believed Defendant was trying to obscure his identity by pulling up his hood low over his face and down to his nose.

Crider then saw Defendant cross Third Street against the light and nearly walk in front of a westbound car. Crider believed Defendant's hood was pulled so low over Defendant's face that he was unable to see the approaching vehicle.

Crider circled the block and approached Willow Street from Fourth Street in order to observe Defendant at closer range since he believed Defendant was trying to hide his identity upon recognizing his vehicle as an unmarked patrol car. As Defendant walked, Crider noticed Defendant's left front pocket of his baggy pants swing with each step as if he had a heavy object in his pocket and Crider saw what appeared to be possibly the outline of the slide top of a gun in the bottom of the pocket. Based on his law enforcement experience, Crider thought Defendant might be carrying a gun in his pocket.

Crider decided to engage Defendant in a consensual encounter, and he pulled alongside Defendant, identified himself as "police," and asked Defendant his name. Defendant replied, "Jason." Crider is certain Defendant could see both his partner's badge, which his partner wore on the top of his thigh holster, and Crider's own badge, which he wore on his belt, as Defendant looked from under his hood into the Explorer. As Crider began to ask "Jason who?" Defendant ran.

Crider yelled for him to stop, but Defendant continued to run. Crider attempted to stop Defendant by blocking him with the Explorer, and when that was unsuccessful he gave chase on foot. While Defendant was running, he kept grabbing his pants pocket on the outside, which made

2

Crider believe Defendant had a gun in his pocket. Eventually Crider overtook Defendant and they engaged in a lengthy struggle. When Crider's partner reached them, he helped subdue Defendant. During the struggle, his partner's handcuffs were dropped and a citizen retrieved and handed the handcuffs to the officers. Crider could not remember the citizen's name, but he thought it might have been Defendant's sister.

He conducted a patdown of Defendant and, upon feeling the gun in his left front pants pocket, Crider recovered a Lorcin .380 caliber pistol from the pocket. Crider did not see Defendant's face well enough under the hood to recognize him until after he was subdued. Upon seeing Defendant's face, Crider knew he had been involved in several previous encounters with Defendant. Defendant was taken into custody, advised of his rights, and he then made incriminating statements.

On cross, Crider agreed there was nothing unusual about wearing a hood on a cold December morning. He also acknowledged he was not certain that the object in Defendant's pocket was a gun, but he was suspicious it was. He was certain Defendant saw the officers' badges when he looked into the vehicle and he believed Defendant recognized him from their past encounters.

Defendant offered the testimony of Shawana Walker, who testified as follows:

She was in her vehicle exiting the Family Dollar Store located on Willow Street between Fourth Street and Third Street when she saw Defendant with his hood covering only his head and not part of his face as he walked down Willow Street toward Fourth Street. She saw nothing suspicious about Defendant, she could see his face, and she saw no bulge in his pants pocket. Defendant was across the street directly in front of her when she saw and immediately recognized him. Defendant frequently wore the hoodie and she had seen him in it within the two weeks prior

3

to the incident at issue. She is a family friend and has known Defendant and his family for at least 25 years. Upon seeing Defendant she intended to speak to him as she had been asked by his sister to be on the lookout for him and she wanted to tell Defendant to call his sister.

Before she could speak to Defendant, she saw a sage and beige sports utility vehicle ("SUV") turn left from Third Street onto Willow Street and pull alongside Defendant. There were two "white guys" in the SUV. She did not know and could not tell they were police officers, she could not describe the men in the SUV, and she did not know and could not tell the SUV was affiliated with the police. She described the color of the SUV as sage or light mint with beige at the bottom. She did not recognize Crider in the courtroom.

Walker was between 15 and 20 feet away from Defendant when the SUV first approached him. She could not hear any conversation but she believes both the passenger and driver's windows were down. She saw the SUV drive on the sidewalk and strike Defendant, who then ran away. After she saw Defendant being chased by the two white men after being struck by the SUV, she followed in her vehicle because she was concerned for Defendant's safety. She saw the men struggle with Defendant and handed one of the men the dropped handcuffs. She knew the men struggling with Defendant were police officers when she noticed one had a bulletproof vest on and she noticed the dropped handcuffs. She never saw a gun pulled from Defendant's pocket, but she did see a handheld game pulled from Defendant's pocket by the officers.

Defendant was charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## II. ANALYSIS

Defendant raises as the single argument for suppression of all evidence resulting from the

stop of his person that Crider lacked reasonable suspicion to justify a non-consensual investigative detention, or *Terry* stop, of Defendant. The Government contends the *Terry* stop of Defendant was justified by reasonable suspicion.[2] Although Defendant, as the proponent of the motion to suppress, generally bears the burden of establishing his Fourth Amendment rights were violated, *see Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978), it is the Government's burden to demonstrate by a preponderance of the evidence that a *Terry* stop was properly supported by reasonable suspicion. *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990). The Government has met that burden in this matter.

Reasonable suspicion must be based on "specific and articulable facts" and "rational inferences from those facts." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). An officer's "ill-defined hunch" is not enough; reasonable suspicion requires "a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Bell*, 555 F.3d 530, 540 (2009) (internal quotations and alterations omitted). Still, this is a "minimal" burden. *United States v. Smith*, 594 F.3d 530, 537 (6th Cir. 2010). In articulating the bases for suspicion, officers may rely on factors that are in themselves innocent, "so long as a sufficient degree of suspicion attaches to [the innocent] behavior." *United States v. Saez*, 111 F.3d 132, 1997 WL 176434, at *3 (6th Cir. 1997) (Table) (citing *United States v. Sokolow*, 490 U.S. 1, 10 (1989)). Furthermore, law enforcement officers are entitled to draw reasonable inferences from the facts in light of their training and experience, even when a lay observer's suspicions might not be aroused. *Smith*, 594 F.3d at 537.

As Defendant argues, a person approached by police "need not answer any question put to

---

[2] While its response argues suppression is not appropriate under the reasoning of *Herring v. United States*, 129 S.Ct. 695 (2009), the Government did not pursue this argument and it is not necessary to address it herein.

him; indeed, he may decline to listen to the questions at all and may go on his way." *Florida v. Royer*, 460 U.S. 491, 498 (1983) (citing *Terry*, 392 U.S. at 32-33). While "walking away" from police may be "so innocent or susceptible to varying interpretations as to be innocuous," *United States v. Patterson*, 340 F.3d 368, 371-72 (6th Cir. 2003), "flight" from police can justify a *Terry* stop. *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (holding flight from police in a high crime area created reasonable suspicion). As *Wardlow* explains, a citizen is entitled to go about his business and ignore the police, but "unprovoked flight" is "not 'going about one's business;'" it is instead "the consummate act of evasion" and it is "certainly suggestive" of wrongdoing. *Id.* at 124-25.

The Government asserts Crider had reasonable suspicion because: (1) Defendant attempted to conceal his identity from the police by pulling his hood low over his face; (2) Defendant had a suspected gun in his front pocket; and (3) Defendant fled from the police after they identified themselves as such. At the conclusion of the hearing, Defendant conceded that the above three factors, if found to be credible, would create reasonable suspicion for an investigatory stop. As the Court understands Defendant's argument, Defendant relies on the testimony of Walker to argue his hood was not pulled low over his face, he "may" not have known the men in the Explorer were police, and it may not have looked like he had a gun in his pocket. Based on Walker's testimony, Defendant argues he may have simply been scared when two white men hit him with their car so he ran for safety purposes.

I **FIND** the testimony of Crider to be consistent and credible. While the Court was presented with differing versions of the events at issue, the version suggested by Crider is more credible. The two witnesses disagreed on many details, including but not limited to the color of the Explorer,

6

whether Defendant's hood was pulled low on his face, where the initial encounter between police and Defendant began and how it began, and the route taken by the Explorer when it approached Defendant. Neither witness varied from his or her version of the events during cross examination. However, Walker was too far away to hear what Crider said to Defendant as he pulled alongside him so she could not dispute that he identified himself as being with the police before Walker fled. Any dispute about whether Defendant could actually see the badges worn by the officers is immaterial because there is no reliable evidence to dispute they verbally identified themselves as police prior to Defendant's flight. While Walker failed to recognize the outline of a possible gun in Defendant's pants pocket, she also failed to see a gun pulled from his pants, even though it appears undisputed that Defendant had a gun in his pocket when he was apprehended. While Walker could see enough of Defendant's face to recognize him in a hoodie that he frequently wore, she was not at the scene when Crider first saw Defendant attempt to hide his identity. Finally, the Court finds it insignificant that Walker did not know the Explorer was associated with the police since Crider credibly testified the vehicle was known in the area as an undercover police vehicle in his experience and he had past dealings with Defendant indicating Defendant likely had more experience with the police than Walker.

Crider's decision to conduct an investigatory stop was supported by reasonable and articulable suspicion because the Government has shown Defendant attempted to conceal his identity from Crider, Crider could see Defendant had a suspected gun in his pocket, and Defendant fled from Crider after he identified himself as being a police officer. While Defendant suggests an innocent explanation of his behavior, for example, he pulled his hood on because he was cold, *Terry* accepts the risk that the police may stop innocent people. As argued by the Government, the

credible testimony of Crider presents the sort of situation in which an officer is justified in performing a *Terry* stop.

I **FIND** that under the totality of the above-described, rapidly-occurring circumstances, Crider possessed a reasonable suspicion supporting his stop of Defendant.

## III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[3] that Defendant's motion to suppress [Doc. 9] be **DENIED**.

                                                   s/*Susan K. Lee*
                                                   SUSAN K. LEE
                                                   UNITED STATES MAGISTRATE JUDGE

---

[3]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are "frivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).