UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 1:10-cr-51 |
| v. | ) | |
| | ) | Judge Mattice |
| HAROLD JACKSON | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Harold Jackson's Objections to Magistrate Judge's June 21, 2010 Report and Recommendation [Court Doc. 15].

Mr. Johnson filed his Motion to Suppress [Court Doc. 9], which was referred to Magistrate Judge Susan K. Lee. [Court Doc. 10]. Magistrate Judge Lee held an evidentiary hearing on Mr. Johnson's Motion to Suppress and issued her Report and Recommendation, which recommended Mr. Johnson's motion be denied. [Court Doc. 14]

Mr. Johnson timely filed objections to Magistrate Judge Lee's R&R [Court Doc. 15], and the Government responded. [Court Doc. 16]

The Court has now reviewed the entire record pertinent to the instant objections, and for the reasons described below, the Court will **OVERRULE** Defendant's Objections to the R&R, will **ACCEPT and ADOPT** Magistrate Judge Lee's R&R, and will **DENY** Defendant's Motion to Suppress.

I.  **STANDARD OF REVIEW**

The Court must conduct a *de novo* review of those portions of the Report and Recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

The Court may also receive further evidence or recommit the matter to the magistrate judge with instructions. *Id.*

## II. FACTS

Magistrate Judge Lee held an evidentiary hearing on Defendant's Motion to Suppress on June 15, 2010. During that hearing, Mr. Marvin Crider, a police officer with the Chattanooga Police Department ("CPD"), testified for the Government and Ms. Shawana Walker, an acquaintance of the Defendant, testified for the Defendant.

In her R&R, Magistrate Judge Lee recounted at some length the facts developed at the evidentiary hearing. (Court Doc. 42, R&R at 1-4.) Defendant has not objected to the basic facts as outlined in Magistrate Judge Lee's R&R. Instead, Defendant's objections focus on Magistrate Judge Lee's findings and the legal conclusions as they relate to those facts, especially her determinations about the relative credibility of Ms. Walker's testimony as compared to Mr. Crider's testimony and her interpretation of "flight" law in the Sixth Circuit.

After reviewing the record and finding the facts to be consistent with Judge Lee's R&R, and in light of Defendant's failure to take issue with the basic facts, the Court **ADOPTS BY REFERENCE** the facts as set out in Magistrate Judge Lee's R&R. (*Id.*) The Court will refer to the facts only as necessary to analyze the issues raised on objection.

## III. ANALYSIS

Initially, in his Motion to Suppress, Defendant argued that because his initial seizure (against a fence, by force) was not supported by reasonable suspicion or probable cause, it was unlawful, and any evidence gained as a result thereof should be dismissed. During

the hearing on the motion to suppress before Magistrate Judge Lee, however, Defendant's counsel conceded that if Magistrate Judge Lee found that Officer Crider's interpretation of the facts was correct and that the Defendant had attempted to conceal his identity, that the Defendant had fled, and that Officer Crider had observed what he had claimed in the Defendant's pocket, there was no legal argument to be made that the *Terry* stop was not supported by reasonable suspicion. Therefore, as Magistrate Judge Lee clarified and Defendant's counsel agreed, the motion to suppress really centered on whether Officer Crider's testimony was credible, especially in light of any differences between his testimony and Ms. Walker's testimony. Magistrate Judge Lee then issued her R&R, in which she found Officer Crider's testimony to be "consistent and credible" and explained the reasons why she found it more credible than the version offered by Defendant, including by the testimony of his witness, Ms. Shawana Walker.

Defendant then objected to Magistrate Judge Lee's R&R, first arguing that Ms. Walker's testimony was as credible as Officer Crider's, and then – using a version of the facts supported only by Ms. Walker's testimony and in conflict with Officer Crider's testimony – that Defendant's flight was reasonable and did not give rise to reasonable suspicion that a crime was afoot. Defendant especially focused on the fact that Magistrate Judge Lee had not identified that the area in question was a "high-crime" area, and thus Defendant's flight could not be deemed as supporting a finding of reasonable suspicion given that Supreme Court and Sixth Circuit case law that found flight to support reasonable suspicion only involved flight in a high crime area. Finally, although during the hearing Defendant's counsel said that he was not raising the frisk after the chase as an issue, in his objections, Defendant objects to the frisk after the search, largely based on his disbelief

of Officer Crider's testimony regarding his observation of the bulge in the Defendant's pocket and his belief that it was a gun.

The Government responded briefly, arguing that Magistrate Judge Lee's credibility determinations were dispositive and that this Court could not or should not overturn them, relying on dicta from a footnote in *United States v. Raddatz*, 447 U.S. 667, 681 (1980) ("[It is] unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witnesses whose credibility is in question could well give rise to serious questions which we do not reach.")

### A. Credibility Determinations

Defendant is correct that, in essence, "Ms. Walker's testimony actually differs little from that of Officer Crider," but is incorrect that, in those areas where Ms. Walker's testimony does differ from that of Officer Crider, her testimony is as credible as his. (Def.'s Objections to R&R, Court Doc. 15 at 2.) Defendant highlights two main areas of conflict between the testimony: (1) that the police officers identified themselves as such to the Defendant; and (2) that the vehicle in which the officers was driving was readily identified as a "police vehicle" in the area in which they were driving it.

First, Defendant focuses on the fact that Ms. Walker said she did not hear the officers identify themselves as such, though she was only 15-20 feet away from the officers during Officer Crider's conversation with the Defendant. (*Id.*) It is important to note this is not actually "conflicting" testimony, insofar as Ms. Walker herself said during the evidentiary hearing that she wouldn't necessarily be able to hear the officers, as occupants of a vehicle, if they had said "we're police officers" to the defendant.

Even if this were an area of conflict in the testimony, however, the Court notes that there is a significant difference between a lawyer facing and projecting his voice towards the jury box in a quiet courtroom (the example of 15-20 feet Defendant's counsel used) and an officer pulling alongside an individual on a sidewalk and identifying himself to that individual alone, quite possibly with traffic noise in the background. Therefore, the evidence is not in conflict that Officer Crider told Defendant that they were police officers, and even if it were, the Court agrees with Magistrate Judge Lee that Officer Crider's testimony is more credible than Ms. Walker's on this point.

Second, Defendant contends because Ms. Walker did not know the vehicle was a police vehicle, Officer Crider's contention that it was known as a police vehicle in that area is undercut. Again, Officer Crider's testimony is more credible on this point. Officer Crider testified that that particular vehicle has been used by the CPD for several years, that he had been in that vehicle for almost three months, and that it was his experience that people not only recognized that vehicle, but that they would flee at the mere sight of it.

It is reasonable to believe that those individuals who would be more likely to be able to recognize an undercover police vehicle as such would be those who would have use for such information, including, in high numbers, those engaged in criminal activities. Ms. Walker, far from being an individual engaged in criminal activity, actually helped the police detain the Defendant. Therefore, the fact that she did not recognize the undercover police vehicle is not surprising and certainly does not undercut Officer Crider's statements to any substantial degree. On this point – that the vehicle was readily identified in that neighborhood as an undercover police vehicle – Officer Crider's testimony again is more credible.

Some of the other small differences in their testimony are immaterial: for instance, Officer Crider's contention that the vehicle was "tan," as opposed to Ms. Walker's contention that the vehicle was a "sage green and beige," is immaterial, especially in light of her statement (when asked to clarify the color confusion) that it was "a light colored car."

Other differences are material, and weigh heavily in Officer Crider's favor. For instance, Officer Crider stated that he could see that the Defendant's front left pocket was heavily weighted and swinging, whereas Ms. Walker said that she could not see a bulge or a heavy object in his pants pocket. Though the later retrieval of the gun from the Defendant's pocket does not affirmatively prove that Officer Crider did indeed observe a bulge tending to resemble a firearm in Defendant's pocket, it does serve as an independent fact that tends to corroborate his statements about what he observed and support their credibility and tends to undermine Ms. Walker's observations on the issue and their corresponding credibility. Because Defendant did have a heavy, weighted object in his pants pocket when both Officer Crider and Ms. Walker observed him, and because only Officer Crider, not Ms. Walker, observed that heavy weighted object, it is reasonable to give more credence to Officer Crider's testimony on the point than to Ms. Walker's.

Further, one of the most significant material differences – whether or not the Defendant's face was obscured by his hood – is inconclusive. The Court first notes that Ms. Walker had known the Defendant for more than twenty years, while Officer Crider, though he had previously interacted with Defendant, did not have such familiarity, and that it is not unlikely that under such circumstances, she might be able to identify Defendant, even when he was attempting to obscure his identity, when others who knew him less well might not be able to do the same. Regardless, Ms. Walker testified that his face was not

obscured *from her*, but that testimony is not the same as asserting that his face was not obscured from the police officers, as Officer Crider testified. Given this discrepancy, and given the relative credibility determinations made above, the Court agrees with Magistrate Judge Lee's finding that the Defendant was attempting to conceal his identity, as it is supported by the evidence.

As a final matter, the Court notes that because it agrees with Magistrate Judge Lee's findings, it need not consider the Government's argument that it cannot overturn her credibility determinations. The Court notes, however, that although there is some conflicting precedent in the Sixth Circuit, the weight of such precedent largely militates for the trial court making its credibility determinations on motions to suppress *de novo*, even if such credibility determinations run counter to those of the magistrate judge.[1]

---

[1] *See, e.g.*, *United States v. Davis*, 361 F. App'x 632, 635 (6th Cir. 2010) ("This court answered affirmatively the question *Raddatz* left open, holding that a district judge may disregard a magistrate's credibility findings without listening to live testimony.") (citing *United States v. Saltzman*, 922 F.2d 1218) (6th Cir. 1993); *Saltzman*, 922 F.2d at *2 (6th Cir.1993) (rejecting the Government's reading of the *Raddatz* footnote and upholding a trial court's rejection of the magistrate judge's proposed findings on credibility, noting "trial courts often determine credibility from depositions, so we do not find that it was required that the trial court in this instance needed to look at these witnesses in order to disregard the findings of credibility by the magistrate judge."); *United States v. Montgomery*, No. 09-20101, 2010 WL 2663202, at *3 & n.1 (E.D. Mich. July 2, 2010) ("Where a proper objection has been made to the magistrate judge's credibility determinations, a district court reviews the determinations de novo"); *United States v. Annable*, No. 3:04-CR-045, 2006 WL 278983, at *2 (S.D. Ohio, Feb. 2, 2006) ("Therefore, the district judge may, but is not required to, rely upon the record created by the magistrate judge and upon the magistrate judge's credibility determinations.")

*Compare*, *United States v. Bailey*, 302 F.3d 652, 657 (6th Cir. 2002) ("We note that it is an open question in this circuit whether a district court can reject a magistrate judge's credibility determinations without holding a new hearing."); *Wilson v. United States*, 931 F.2d 894, 1991 WL 66560, at *2 (6th Cir. 1991) ("Although the magistrate makes a report and recommendation to the trial judge, the trial judge is free to accept the credibility recommendations of the magistrate without reconducting the hearing. *United States v. Raddatz*, 447 U.S. 667 (1980). In that "rare case" of reversal of a magistrate's credibility determinations, "there should be found in the transcript an articulable basis for rejecting the magistrate's original resolution of credibility and that basis should be articulated by the district judge." *United States v. Marshall*, 609 F.2d 152, 155 (5th Cir.1980).); *United States v. Maricle*, 6:09-16-S-DCR, 2009 WL 3426748, at *1, n.1 (E.D. Ky. Oct. 15, 2009) ("However, if the district court finds there may be a problem as to the credibility of a witness or witnesses or for other good reasons, *it may, in the exercise of discretion*, call and hear the testimony of a witness or witnesses in an adversary proceeding.)

*But see*, *United States v. Bermudez*, 283 F.3d 424, 2000 WL 1871676, at *3 (6th Cir. 2000) (citing

Given the totality of the evidence and the analysis above, this Court agrees with Magistrate Judge Lee's credibility determinations as to Officer Crider and Ms. Walker.

B.     **"Flight" Precedent in the Sixth Circuit and Reasonable Suspicion**

In his argument objecting to the use of his flight as an element in Officer Crider's reasonable suspicion analysis, Defendant relies largely on a version of the facts possible only if the Court disbelieves Officer Crider and believes Ms. Walker. As the Court stated above, this Court agrees with Magistrate Judge Lee's credibility determinations and likewise believes Officer Crider's version of events where they differ from Ms. Walker's. Defendant even goes so far as to say "The Court did not make a finding of fact that the two white males were clearly identified as police with their badges visible," which is clearly incorrect, not only in light of the Court's credibility determinations, but also in light of Magistrate Judge Lee's statement that "[a]ny dispute about whether Defendant could actually see the badges worn by the officers is immaterial because there is no reliable evidence to dispute that they verbally identified themselves as police prior to Defendant's flight." (R&R at 7.)

The Court agrees that the debate over whether Defendant saw the badges is immaterial in light of the undisputed statement that the officers identified themselves verbally as police officers. Further, although Defendant disputes Officer Crider's testimony,

---

extrajurisdictional precedent to hold "We agree with the several circuits that have relied upon this footnote to hold that a district court normally should not reject a proposed finding that rests on a credibility determination without hearing testimony from the witness."); *United States v. Brown*, 1:09-cr-9, 2007 WL 1345463, at *1 (E.D. Tenn. May 7, 2007) ("Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment.") (later cited in *United States v. Davidson*, Criminal Action 6:05-30-DCR & Civil Action 6:06-407-DCR 2008 WL 170507, at *6 (E.D. Ky. Jan. 17, 2008) and *United States v. Zellars*, Criminal Action 6:07-08-DCR, 2007 WL 1536815, at *3 (E.D. Ky. May 24, 2007).)

the other evidence that militates for Defendant's having already recognized the vehicle and the men riding in it as being associated with the CPD – the vehicle's identifiability, the Defendant's past history with Officer Crider, and the visibility of their badges – was established in Officer Crider's testimony and either uncontested by, or unknown to, Ms. Walker. Therefore, this Court finds that before Defendant's flight, the evidence, particularly the officers' identification of themselves as police officers to the Defendant, supports a finding that Defendant recognized the vehicle and the men therein as being affiliated with the CPD.

Defendant is correct, however, that the cases cited by Magistrate Judge Lee discussing flight discuss it in the context of high-crime areas, usually late at night. This trend is found in the vast majority of Sixth Circuit flight precedent, in which the courts first establish that the area is "high crime" and then turn to the reasonable suspicion analysis, usually focusing on the precise area defined as "high crime," the time of day, or other suspicious behaviors.[2]

First, it is important to note that while Magistrate Judge Lee's R&R makes no

---

[2] Sixth Circuit precedent on flight was first established in a case predating the *Illinois v. Wardlow*, 528 U.S. 119 (2000) case cited by Magistrate Judge Lee, *United States v. Pope*, 561 F.2d 663, 668 (6th Cir. 1977), in which the Sixth Circuit held that "flight from a clearly identified law enforcement officer may furnish sufficient ground for a limited investigative stop" because "[f]light invites pursuit and colors conduct which hitherto has appeared innocent." Like the rest of Sixth Circuit flight precedent, however, the only post-*Wardlow* citation of *Pope* for this principle by the Sixth Circuit occurred in a case, *United States v. Matthews*, 278 F.3d 560 (6th Cir.2002), in which the court identified the area involved as a "high-crime area." The case provided by Defendant as supplemental authority, *United States v. Johnson,* 2010 WL 3489004 (6th Cir. Sept. 8, 2010) (Court Doc. 17, Suppl. Authority), catalogs many of the Sixth Circuit's flight opinions and the various factors considered in the reasonable suspicion analysis in each, as does *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006) and *United States v. Brock*, No. 07-20400-STA, 2008 WL 4279623, at *3 (W.D.Tenn. 2008). For other flight cases, *see, e.g.*, *United States v. Smith*, 594 F.3d 530, 540-41 (6th Cir. 2010); *United States v. Keith*, 559 F.3d 499, 503-04 (6th Cir. 2009); *United States v. Luqman*, 522 F.3d 613, 617 (6th Cir. 2008); *United States v. Pearce*, 531 F.3d 374, 382-84 (6th Cir. 2008); and *United States v. Thomas*, 38 F. App'x 198, 201-02 (6th Cir. 2002).

specific finding about the high-crime nature of the area, Officer Crider's testimony alludes to it, when discussing that that vehicle is well-known in that neighborhood in particular and "the housing developments" in general. Such a vague assertion, however, would likely fail to meet the Sixth Circuit's standard for particularity in the description of a high-crime area. *See United States v. Caruthers*, 458 F.3d 459, 467-68 (6th Cir. 2006). This is immaterial, however, because, as discussed below, nothing in Magistrate Judge Lee's analysis *requires* a finding that the area was a high-crime area.

Defendant apparently misunderstands the flight standard announced in *Wardlow* and later interpreted in the Sixth Circuit. In *Wardlow*, the Supreme Court upheld the use of contextual clues – the high crime nature of the area and the time of day – in a *Terry* reasonable suspicion analysis when coupled *with* unprovoked flight. In so holding, it said that "it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police." *Id.* at 125-26. Nothing in *Wardlow* or Sixth Circuit precedent interpreting it has held that flight, standing alone, is sufficient for reasonable suspicion for a *Terry* stop, but likewise nothing in Magistrate Judge Lee's analysis of *Wardlow* requires it to stand for any such holding.

In this case, many other behaviors and observations contributed to Officer Crider's "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Caruthers*, 458 F.3d at 464. The most significant of these factors, of course, was Defendant's headlong flight (even after hitting/being hit by Officer Crider's vehicle), but this flight was the last event in a series of events that, at each step, contributed to Officer Crider's reasonable suspicion.

First, the Defendant attempted to conceal his identity upon seeing a vehicle associated with the CPD. Then, Officer Crider, after noticing this attempt, noticed the outline of a possible gun in his front left pocket. Finally, when officers engaged Defendant in a consensual encounter, he gave only one name that arguably was false. When asked to clarify and amplify this response, he launched into flight headlong, failing to stop even after hitting/being hit by a vehicle and culminating in his resisting arrest. There is no question here, as in other cases, as to Defendant's speed or whether Defendant was merely walking away; Defendant's flight, in this case, is properly characterized as "headlong" and ended with him forcibly resisting arrest.

Accordingly, this Court agrees with Magistrate Judge Lee's findings in her R&R that the evidence adduced at the hearing supports a finding that Officer Crider's temporary detention was supported by a reasonable and articulable suspicion.

### C. Legality of the Frisk

Finally, Defendant challenges the legality of the post-detention frisk, despite assuring Magistrate Judge Lee at the hearing that the legality of the frisk was no longer at issue. When an individual is subject to a lawful investigative detention, an officer may conduct a limited frisk or pat-down of that person for weapons if the officer has a reasonable suspicion of criminal activity and a reasonable belief that the suspect is armed and dangerous. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Walker*, 181 F.3d 774, 778. In justifying the particular intrusion, the officer must be able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry*, 392 U.S. at 21; *Walker*, 181 F.3d at 778.

As discussed above, Officer Crider did have a "particularized and objective basis for suspecting" the Defendant of criminal activity and of being armed and dangerous. Therefore, the Court agrees with Magistrate Judge Lee that the brief search for weapons was legitimate, as it was supported by a reasonable, articulable suspicion both that the Defendant was engaged in a criminal activity and that he was armed and dangerous.

## IV. CONCLUSION

For the reasons explained above, the Court **ORDERS** the following:

(1) The Defendant's Objections [Court Doc. 15] are **OVERRULED**; (2) Magistrate Judge Lee's R&R [Court Doc. 14] is **ACCEPTED and ADOPTED**; and (3) Defendant's Motion to Suppress [Court Doc. 9] is **DENIED**.

**SO ORDERED** this 29th day of October, 2010.

          /s/Harry S. Mattice, Jr.
          HARRY S. MATTICE, JR.
          UNITED STATES DISTRICT JUDGE